FILED
2026 Oct-21 PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| BRENDA GEIGER, CLAUDIA SAMPEDRO, IESHA MARIE CRESPO, ROSA ACOSTA, YODIT YEMANE a/k/a JODIE JOE, JANET GUZMAN and ASHLEY ILENE,<br><br>Plaintiffs,<br><br>- against -<br><br>VOLCANO, INC d/b/a CLUB VOLCANO,<br><br>Defendant. | Case No.: |

Plaintiffs BRENDA GEIGER, CLAUDIA SAMPEDRO, IESHA MARIE CRESPO, ROSA ACOSTA, YODIT YEMANE a/k/a JODIE JOE, JANET GUZMAN and ASHLEY ILENE, (collectively, "Plaintiffs"), file this Complaint against VOLCANO, INC, d/b/a CLUB VOLCANO ("Defendant"), respectfully allege as follows:

**BACKGROUND**

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, CLUB VOLCANO located at 514 19th St Ensley, Birmingham, Alabama 35218 (hereinafter referred to as the "Strip Club" or "Volcano").

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of the Alabama Right of Publicity Act - Ala. Code §§ 6-5-770 through 6-5-774; d) Common Law Right of Publicity; e) Alabama Deceptive Trade Practices Act (ADTPA) Ala. Code § 8-19-1 et seq.; f) Defamation; g)

Negligence and Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant VOLCANO, INC, is a corporation formed under the laws of the state of Alabama, with its principal place of business located at 514 19th St Ensley, Birmingham, Alabama, 35218. Upon information and belief, VOLCANO, INC operates CLUB VOLCANO, which is located at 514 19th St Ensley, Birmingham, Alabama 35218.

8. Venue is proper in the United States District Court for the Northern District of Alabama because Defendant's principal place of business is located in Birmingham, Alabama, Jefferson County.

9. A significant portion of the alleged causes of action arose and accrued in Birmingham, Alabama and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Birmingham, Alabama.

## PARTIES

***Plaintiffs***

10. Plaintiff BRENDA GEIGER ("GEIGER") is a well-known professional model, and a resident of Onondaga County, New York.

11. Plaintiff CLAUDIA SAMPEDRO ("SAMPEDRO") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12. Plaintiff IESHA MARIE CRESPO ("CRESPO") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13. Plaintiff ROSA ACOSTA ("ACOSTA") is a well-known professional model, and a resident of Los Angeles County, California.

14. Plaintiff YODIT YEMANE a/k/a JODIE JOE ("YEMANE") is a well-known professional model, and a resident of Los Angeles County, California.

15. Plaintiff JANET GUZMAN ("GUZMAN") is a well-known professional model, and a resident of Los Angeles County, California.

16. Plaintiff ASHLEY ILENE ("ILENE") is a well-known professional model, and a resident of Burlington County, New Jersey.

***Defendant***

17. Defendant, VOLCANO, INC d/b/a Club Volcano, is a corporation formed under the laws of the state of Alabama and registered to conduct business in Alabama. During times relevant to this action, VOLCANO, INC operated CLUB VOLCANO.

18. Service of process may be perfected upon Defendant VOLCANO, INC d/b/a CLUB VOLCANO by serving the registered agent for service of process, Cynthia Denise Murray, who can be located at 514 19th Street Ensley, Birmingham, AL 35218.

## FACTUAL ALLEGATIONS

19. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

20. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and

brands, for which they model.

21. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

22. In the case of each Plaintiff, this apparent claim was false.

23. Moreover, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization.

24. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

25. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

26. GEIGER is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

27. That we know of, GEIGER is depicted in the photo in Exhibit "A" to promote Volcano on its Facebook page. This Image was intentionally altered to make it appear that GEIGER was either an employee working at Volcano, that she endorsed Volcano, or that she was otherwise associated or affiliated with Volcano.

28. GEIGER has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29. SAMPEDRO is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).[1]

30. That we know of, SAMPEDRO is depicted in the photos in Exhibit "B" to promote Volcano on its Facebook page. These Images were intentionally altered to make it appear that SAMPEDRO was either an employee working at Volcano, that she endorsed Volcano, or that she was otherwise associated or affiliated with Volcano.

31. SAMPEDRO has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32. CRESPO is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of Models Latina March 2015 and Shock magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

33. That we know of, CRESPO is depicted in the photos in Exhibit "C" to promote Volcano on its Facebook page and Instagram account. These Images were intentionally altered to

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

make it appear that CRESPO was either an employee working at Volcano, that she endorsed Volcano, or that she was otherwise associated or affiliated with Volcano.

34. CRESPO has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35. ACOSTA started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,000 Twitter followers.

36. That we know of, ACOSTA is depicted in the photos in Exhibit "D" to promote Volcano on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that ACOSTA was either an employee working at Volcano, that she endorsed Volcano, or that she was otherwise associated or affiliated with Volcano.

37. ACOSTA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38. YEMANE is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry.

39. That we know of, YEMANE is depicted in the photos in Exhibit "E" to promote Volcano on its Instagram account. These Images were intentionally altered to make it appear that YEMANE was either an employee working at Volcano, that she endorsed Volcano, or that she was otherwise associated or affiliated with Volcano.

40. YEMANE has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41. GUZMAN is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

42. That we know of, GUZMAN is depicted in the photo in Exhibit "F" to promote Volcano on its Instagram account. This Image was intentionally altered to make it appear that GUZMAN was either an employee working at Volcano, that she endorsed Volcano, or that she

was otherwise associated or affiliated with Volcano.

43. GUZMAN has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44. ILENE is a model, content creator, influencer and clothing designer based in New Jersey. As a clothing designer, Ilene has created her own brand and website, Gal Vault (galvault.com). Ilene's start in modeling began when her social media posts caught the attention of Pretty Little Thing, which quickly led to collaborations with Fashion Nova, Shein and Matte Collection, and a career that has taken her around the world. Her current social media following is 115,000 on TikTok and 322,000 on Instagram. Ilene is also an advocate of regular exercise and self-caree.

45. That we know of, ILENE is depicted in the photo in Exhibit "G" to promote Volcano on its Instagram account. This Image was intentionally altered to make it appear that ILENE was either an employee working at Volcano, that she endorsed Volcano, or that she was otherwise associated or affiliated with Volcano.

46. ILENE has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

47. Defendant operates (or operated, during the relevant time period) a Strip Club, where it is (or was) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business's clientele.

48. Defendant owns, operates, and controls Volcano's social media accounts, including its Facebook, Twitter, and Instagram accounts.

49. Defendant used Volcano's Facebook, Twitter, and Instagram accounts to promote

Volcano's, and to attract patrons.

50. Defendant did this for its own commercial and financial benefit.

51. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Volcano, endorsed Volcano, or was otherwise associated or affiliated with Volcano.

52. Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Volcano to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

53. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Volcano, and at no point have any of the Plaintiffs ever endorsed Volcano or otherwise been affiliated or associated with Volcano.

54. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

55. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

56. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

57. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

58. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the

client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

59. Most licenses to use a model's image are for one, two, or three-year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

60. Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Volcano.

61. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

62. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Volcano.

63. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

64. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

65. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Volcano's website, Twitter, Facebook, or Instagram accounts.

66. Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION

**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

67. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

68. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

69. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

70. Thus, this was done in furtherance of Defendant's commercial benefit.

71. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

72. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

73. As such, an unauthorized use of Plaintiffs' image to promote a establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

74. Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived

Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

75. Despite the fact that Defendant were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

76. Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

77. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

78. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

79. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

80. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

81. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**<u>SECOND CAUSE OF ACTION</u>**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

82. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

83. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

84. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

85. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

86. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

87. Defendant's false advertising described above have the capacity or tendency to

confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

88. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

89. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

90. Defendant knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

91. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

92. Defendant's wrongful conduct as described herein was willful.

93. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

94. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

95. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

96. Defendant had caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

97. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Violation of the Alabama Right of Publicity Act - Ala. Code §§ 6-5-770 through 6-5-774)**

98. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

99. Each Plaintiff has identified herself in each of Plaintiffs' Images as set forth in the exhibits attached to this complaint and each Plaintiff alleges upon information and belief that her image is readily identifiable in each photograph.

100. Plaintiffs' Images have not been copyrighted under federal law.

101. Each Plaintiff is a person within the meaning of the Alabama Right of Publicity Act and possesses enforceable rights in her name, image, likeness, and other indicia of identity.

102. Defendant used Plaintiffs' photographs, images, likenesses, and personas—each constituting "indicia of identity" under Ala. Code § 6-5-771—without consent and for purposes of advertising, promoting, and marketing Defendant's commercial establishment.

103. Defendant's use of Plaintiffs' indicia of identity was for commercial purposes within the meaning of Ala. Code § 6-5-772 and was not incidental, newsworthy, expressive, or otherwise exempt under the Act.

104. Defendant knew or should have known that Plaintiffs had not consented to the use of their indicia of identity and nevertheless willfully and intentionally exploited Plaintiffs' identities for Defendant's own commercial gain.

105. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered actual damages, including loss of licensing fees, loss of control over their identities, reputational harm, and emotional distress, and Defendant had been unjustly enriched.

106. Defendant misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

107. Defendant's use and publication of Plaintiffs' Images as set forth in the exhibits attached to this complaint was to advertise their establishment was for the purpose of advertising goods or services.

108. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

109. Plaintiffs are further informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered to reach a new audience and/or promote a different product.

110. Defendant published, performed, distributed, transmitted or otherwise made available to the public each Plaintiffs' image and likeness with knowledge that the use was unauthorized.

111. Defendant knew or reasonably should have known that the use of Plaintiffs' Images was unauthorized.

112. Defendant's use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value or for purposes of comment, criticism, scholarship, satire, or parody.

113. Defendant never obtained Plaintiffs' consent for the use of their images and likenesses.

114. Defendant's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

115. As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

116. As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

117. Pursuant to Ala. Code §§ 6-5-774 and 6-5-775, Plaintiffs seek injunctive relief, actual damages, disgorgement of Defendant's profits, punitive damages, attorneys' fees, costs, and destruction of all materials created or used in violation of the Act.

## FOURTH CAUSE OF ACTION
**(Common Law Right of Publicity)**

118. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

119. Defendant has appropriated each Plaintiffs' likeness for Defendant's commercial purposes without authority or consent from Plaintiffs.

120. Defendant misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

121. Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

122. Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

123. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

124. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

125. Upon information and belief, Defendant's use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

126. At no point did any Defendant ever seek or receive permission or consent to use any Plaintiffs image and likeness for any purpose.

127. Defendant was at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

128. At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their image and likeness.

129. Plaintiffs have been damaged in amounts to be proved at trial.

## FIFTH CAUSE OF ACTION
**(Alabama Deceptive Trade Practices Act (ADTPA) Ala. Code § 8-19-1 et seq.)**

130. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

131. Defendant operated their website and social media accounts in order to promote

Defendant's establishment, to attract clientele thereto, and to thereby generate revenue for Defendant.

132. As such, Defendant's operation of the website and social media accounts, and their publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Alabama.

133. Defendant publication and use Plaintiffs' image and likeness was in a manner that made it appear Plaintiffs gave consent for the use of their Images, and/or created the false impression that Plaintiffs were either working at Defendant's establishment, endorsed the same, or were otherwise affiliated, associated, or connected with Defendant.

134. As such, Defendant's intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant.

135. Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of Alabama.

136. Defendant's advertising practices offends the public policy of Alabama insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendant commercial benefit.

137. Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

138. Defendant advertising practices cause injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

139. There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

140. As a result of Defendant's unauthorized and misleading publication of Plaintiffs' image and likeness on their website and social media accounts, each of the Plaintiff's reputations was injured, and each of the Plaintiff's ability to market herself as a model was injured.

141. As a result of Defendant's unauthorized and misleading use of Plaintiffs' image

and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
**(Defamation)**

142. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

143. As detailed throughout this Complaint, Defendant has published altered image and likeness of Plaintiffs in order to promote Defendant to the general public and potential clientele.

144. Defendant's publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

145. None of these representations were true.

146. In publishing Plaintiffs' Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

147. Defendant was at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

148. In the alternative, Defendant published the image and likeness of Plaintiffs with actual malice because they knew – or reasonably should have known – that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

149. Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

150. Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Alabama law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendant's establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

151. Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Alabama law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

152. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing the business, an inference which the publication of the image and likeness supports.

153. Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Alabama law because, insofar as said publication falsely portrays each of the Plaintiffs as Defendant's employee, it imputes unchastity to her.

154. Defendant's publication of Plaintiffs' image and likeness caused Plaintiff to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## <u>SEVENTH CAUSE OF ACTION</u>
## (Negligence and Respondeat Superior)

155. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

156. Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of

intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

157. Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

158. Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

159. Similarly, Defendant further owed a duty of care to Plaintiffs to ensure that their promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendant.

160. Defendant breached their duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes was not unauthorized, non-consensual, or false and deceptive.

161. Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Alabama law, were not violated. Defendant breached their duty of care to Plaintiffs by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

162. Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

163. As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Conversion)**

164. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

165. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

166. By the conduct detailed above, Defendant converted Plaintiffs' property rights in their image and likeness for their own use and financial gain.

167. As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Unjust Enrichment)**

168. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

169. As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Defendant's establishment to the general public and potential clientele.

170. Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant.

171. Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

172. Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

173. Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to their establishment.

174. Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is

unjust.

175. As such, Plaintiffs have been damaged in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**(Quantum Meruit)**

176. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

177. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

178. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

179. Although Defendant has availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at or endorse their establishment, or are otherwise affiliated with their establishment, Defendant has not compensated Plaintiff.

180. Plaintiff is therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Volcano's Strip Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action

pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e) For all damages available to Plaintiffs under the Alabama Right of Publicity Act - Ala. Code §§ 6-5-770 through 6-5-774;

(f) For all damages available to Plaintiffs under the Alabama Deceptive Trade Practices Act (ADTPA) Ala. Code § 8-19-1 et seq;

(g) For such other and further relief as the Court may deem just and proper.

Dated: October 21, 2026.

***/s/ John V. Golaszewski***

John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*

***/s/ Adam V. Vickers***

Adam V. Vickers
Bar Number: 34993
**INTELLECTUAL PROPERTY CONSULTING, LLC**
400 Poydras St., Suite 1400
New Orleans, LA 70130
(504) 322-7166
avickers@iplawconsulting.com